ADAM MIEDERHOFF (CA State Bar No. 261913)
Supervising Deputy County Counsel
TOM BUNTON (CA State Bar No. 193560)
County Counsel
385 North Arrowhead Avenue, Fourth Floor
San Bernardino, California 92415-0140
Telephone: (909) 387-5446
Facsimile: (909) 387-4069
E-Mail:  Adam.Miederhoff@cc.sbcounty.gov

Attorneys for Defendants, SAN BERNARDINO COUNTY and GUYON FOXWELL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY BUTLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, DEPUTY GUYON FOXWELL and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  5:23-cv-02147 RGK (Ex)<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Adam Miederhoff in support thereof; Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law; and [proposed] Judgment]<br><br>**Date:       August 12, 2024**<br>**Time:       9:00 am**<br>**Location:   Courtroom 850, 8th Floor**<br><br>Honorable R. Gary Klausner<br>United States District Judge<br><br>Honorable Charles F. Eick<br>United States Magistrate Judge |

## <u>NOTICE OF MOTION FOR SUMMARY JUDGMENT</u>

PLEASE TAKE NOTICE that on August 12, 2024, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 850 of the above-entitled Court located at the Roybal Federal Building at 255 East Temple Street, 8th Floor, Los Angeles, California 90012, Defendants, SAN BERNARDINO COUNTY (the "COUNTY") and GUYON FOXWELL ("FOXWELL"), will and hereby do move for partial summary judgment, pursuant to Federal Rules of Civil Procedure, Rule 56, in favor of the Defendants and against Plaintiff, on the following grounds:

1.    Plaintiff has insufficient evidence to support his Second Claim for "Equal Protection Violation - 42 U.S.C. Section 1983" against Defendant FOXWELL because there is no evidence that FOXWELL acted with racial animus except for one alleged after-the-fact comment that is unsupported by anyone other than Plaintiff.

2.    Plaintiff has insufficient evidence to support his Third Claim[1] for "Unlawful Custom and Practice Under Section 1983" (also known as *Monell*) against Defendant COUNTY because there is no evidence of a violation of Plaintiff's civil rights that resulted from unconstitutional custom and practice that is so persistent and widespread as to practically have the force of law.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the separately lodged Declaration of Adam Miederhoff with exhibits "A" through "F", the Separate Statement of Uncontroverted Facts and Conclusions of Law, the pleadings on file, including the Complaint, and any evidence or argument made at or before the hearing that the court deems appropriate to admit.

////

////

////

////

---

[1]   Mistakenly identified in Plaintiff's complaint as the Fourth Claim.

## MEET AND CONFER COMPLIANCE

This motion is made following the conference of counsel pursuant to L.R. 7-3, which occurred in email correspondence dated June 27, 2024, and in a follow-up telephone conversation on June 28, 2024.


DATED: July 9, 2024                    TOM BUNTON
                                       County Counsel


                                       */s/ Adam Miederhoff*
                                       ADAM MIEDERHOFF
                                       Supervising Deputy County Counsel
                                       Attorneys for Defendants,
                                       San Bernardino County and Guyon Foxwell

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION** ...................................................................................... 7

II.    **STATEMENT OF FACTS** ...................................................................... 7

III.   **ON SUMMARY JUDGMENT, PLAINTIFF BEARS THE BURDEN OF ESTABLISHING HIS CLAIM ONCE THE BURDEN HAS BEEN SHIFTED** ......................................................................................... 9

IV.   **THERE IS INSUFFICIENT EVIDENCE OF AN EQUAL PROTECTION VIOLATION** .................................................... 11

V.    **PLAINTIFF'S THIRD CLAIM FOR *MONELL* FAILS BECAUSE THERE IS NO EVIDENCE OF AN UNCONSTITUTIONAL WIDESPREAD CUSTOM AND PRACTICE THAT LED TO A CONSTITUTIONAL RIGHTS VIOLATION** ................................ 13

VI.   **CONCLUSION** ..................................................................... **18**

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

Page(s)

Cases

*Addisu v. Fred Meyer*,
198 F.3d 1130 (9th Cir. 2000)..........................................................................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................10

*Ballou v. McElvain*,
29 F.4th 413 (9th Cir. 2022) ...........................................................................12

*Barren v. Harrington*,
152 F.3d 1193 (9th Cir. 1998)..........................................................................12

*Bd. of County Com'rs of Bryan County v. Brown*,
520 U.S. 397, 117 S.Ct. 1382 (1997)................................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................10

*City of Canton v. Harris*,
489 U.S. 378 (1989).........................................................................................17

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).....................................11

*Comm. Concerning Cmty. Improvement v. City of Modesto*,
583 F.3d 690 (9th Cir. 2009)............................................................................12

*Connick v. Thompson*,
563 U.S. 51 (2011) ......................................................................................15, 18

*Farm Lab. Org. Comm.*,
308 F.3d.............................................................................................................12

*Floyd v. City of New York*,
959 F.Supp.2d 540 (S.D.N.Y. 2013).................................................................11

*Gutierrez v. Municipal Court of the Southeast Judicial District*,
838 F.2d 1031 (9th Cir.1988)...........................................................................12

*In re Oracle Corp. Sec. Litig.*,
627 F.3d.............................................................................................................10

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001).............................................................................11

*Monell v. Department of Social Services of the City of New York*,
436 U.S. 658 (1978).........................................................................................15

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
210 F.3d 1099 (9th Cir. 2000)..........................................................................10

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985).........................................................................................15

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Oviatt v. Pearce*,
   954 F.2d 1470 (9th Cir.1992)..........................................................................17
*Pembaur v. Cincinnati*,
   475 U.S. 469 (1986) .......................................................................................15
*Pitts v. County of Kern*,
   17 Cal.4th 340 (1998) ....................................................................................15
*Pyne v. Meese*,
   172 Cal.App.3d 392 (1985)...........................................................................15
*See Gibson,, supra*,
   290 F.3d...........................................................................................................17
*Serrano v. Francis*,
   345 F.3d 1071 (9th Cir. 2003)........................................................................12
*Thornton v. City of St. Helens*,
   425 F.3d 1158 (9th Cir. 2005)........................................................................12
*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996)............................................................................15
*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012).................................................................17, 18
*Washington v. Davis*,
   426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)...................................12
*Whren v. United States*,
   517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).................................11

Statutes

42 U.S.C. § 1983 ...............................................................................................12, 15

Rules

Federal Rules of Civil Procedure, Rule 56 ...............................................................9

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff asserts Federal claims stemming from an alleged excessive force incident that involved use of a taser. Deputies responded to a call of an unwanted person at an apartment complex. When the first two deputies arrived, they found the 6'4" and 240-pound well-built Plaintiff outside his ex-girlfriend's apartment screaming and yelling and acting aggressive. He was balling up his fists, tensing his muscles, and refused commands to calm down and put his hands behind his back. Two more deputies arrived as backup, including Deputy FOXWELL. Plaintiff continued to refuse commands to put his hands behind his back, clenched his fists and flexed his muscles, and then made a movement toward FOXWELL, who deployed his taser. Two deputies took Plaintiff to the ground and handcuffed him. Plaintiff claims FOXWELL used excessive force in this contact.

Plaintiff attempts to pad his claims by adding that the contact was in violation of his equal protection rights since he is African American and that there was a *Monell* violation based upon an unlawful custom and practice. The equal protection claim is presumably based upon an alleged single statement that Plaintiff claims was said by FOXWELL after the fact. Plaintiff says FOXWELL said he tazed him because he was "big and black." This purported statement was not caught on any of the multiple belt recordings and is only supported by Plaintiff and not one other witness. As for the *Monell* claim, there is no pattern or widespread practice to support a *Monell* claim in this case that involves a single incident of alleged excessive force.

The law and undisputed evidence in this motion will conclusively demonstrate that there is insufficient evidence of an equal protection violation or *Monell* constitutional rights violation. Accordingly, Defendants request that this motion be granted and that the second and third claims be dismissed with prejudice.

## II.   STATEMENT OF FACTS

On June 26, 2017, Deputy FOXWELL was employed by the San Bernardino County Sheriff's Department ("Sheriff's Department"). He was assigned to patrol out of

the Rancho Cucamonga Station. (Uncontroverted Material Fact ("UMF") 1) At approximately 10:12 pm, Deputy FOXWELL assisted other deputies in dealing with an uncooperative subject. (UMF 2) Prior to arriving on scene, he read the call notes, which reflected it was a domestic violence situation and a trespass for someone refusing to leave. (UMF 3)

Deputy FOXWELL arrived at the location around 10:16 pm. It was nighttime at an apartment complex. (UMF 4) When he got out of his car, he heard screaming and yelling coming from the other side of the building, so he started running toward the sound of the yelling. (UMF 5) When he arrived at the source of the yelling, he found Deputy Applegate and Deputy Marquez talking to a man, he later learned was Ricky Butler, the Plaintiff in this case. (UMF 6)

Plaintiff was yelling and screaming and seemed very intense and irate. (UMF 7) Deputy FOXWELL believed the situation was out of control and that the deputies were trying to detain him, with Deputy Applegate pointing his taser at him. (UMF 8) Plaintiff was clenching his fists and screaming, and FOXWELL believed he was getting ready to attack someone. (UMF 9) It was unknown if Plaintiff had any weapons on him. (UMF 10)

Deputy FOXWELL ordered Plaintiff to put his hands behind his back, but he did not comply. (UMF 11) Plaintiff said something to the effect of, "what the fuck I have to put my hands behind my back for." (UMF 12) Plaintiff stood 6 foot, four inches tall, and weighed around 240 to 250 pounds. (UMF 13) Deputy FOXWELL gave him a second order to put his hands behind his back, and that is when Plaintiff clenched his fists and leaned towards him with his upper body, which Deputy FOXWELL perceived as a sudden and aggressive movement. (UMF 14) At that point, FOXWELL, who already had his taser unholstered, pulled the trigger to discharge the taser at Plaintiff. (UMF 15)

Before this incident, Deputy FOXWELL was required to complete department approved training in the academy and then updated training on use of a taser. (UMF 16) The Sheriff's Department had a policy for use of force, which includes a policy related to training on use of force. (UMF 17) The use of force policy provides that Deputies shall

use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the deputy at the time of the event, to accomplish a legitimate law enforcement purpose. (UMF 18)

The Sheriff's Department also had a policy on use of a taser, which includes a policy related to training on use of a taser. (UMF 19) The taser policy provides that a taser may only be used when objective facts indicate that the suspect poses an immediate threat to a law enforcement officer or other member of the public, and that a taser should not be used, among other situations, over a prolonged period of time and once a subject is handcuffed. (UMF 20)

After the taser prongs struck Plaintiff, he looked stunned, and two other deputies grabbed him by the arms and pulled him to the ground. (UMF 21) However, Plaintiff continued to resist while he was being tased. (UMF 22) FOXWELL had the taser deployed for around 25-30 seconds while two other deputies were getting Plaintiff in handcuffs. (UMF 23) FOXWELL was not aware of a set time limit for use of the taser but knew from training that it was only permitted for the amount of time reasonably necessary to take control of a situation. (UMF 24) He stopped using the taser once he heard the handcuffs clicking on Plaintiff. (UMF 25) Plaintiff's race was not a factor in FOXWELL's decision to deploy his taser. (UMF 26)

After Plaintiff was tazed, the paramedics responded. (UMF 27)

## III.   ON SUMMARY JUDGMENT, PLAINTIFF BEARS THE BURDEN OF ESTABLISHING HIS CLAIM ONCE THE BURDEN HAS BEEN SHIFTED

**Federal** Rules of Civil Procedure, Rule 56, provides in pertinent part as follows:

> "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof. . . .The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

9

Summary judgment for the moving party is required when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Id.* at 323-324. A moving party may carry its initial burden of production by one of two methods. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Id.* The moving party, however, need not disprove the other party's case. *Celotex, supra*, 477 U.S. at 324.

Once the moving party has met its initial burden, the nonmoving party is required to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-334; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

By way of the evidence presented in this motion, Defendants have shifted the burden to Plaintiff to prove the elements of his claims. Plaintiff will not be able to meet

1  his burden, and summary judgment should be granted in Defendants' favor on the claims
2  addressed in this motion.

3  **IV.   THERE IS INSUFFICIENT EVIDENCE OF AN EQUAL PROTECTION**
4  **VIOLATION**

5        Plaintiff alleges his equal protection rights were violated when Deputy FOXWELL
6  tazed him, presumably on the basis that he is African American. In his Complaint,
7  Plaintiff vaguely alleges that Deputy FOXWELL violated his Fourteenth Amendment
8  rights "on account of his race." (Complaint, Dkt. 1, at ¶ 35) He fails to allege the specific
9  reason why he believes an Equal Protection violation occurred. However, he includes a
10  single alleged fact in both the factual background section of his Complaint (at ¶19) and
11  in his discovery responses regarding any race-based action. Plaintiff alleges that when he
12  asked why he was tazed, Deputy FOXWELL responded that it was because he was "big
13  and black." (See Plaintiff's response to interrogatories propounded by Defendant
14  Foxwell, set one, attached as Exhibit "E" to Declaration of Adam Miederhoff) This single
15  after-the-fact alleged statement is the sole basis for his claim against Deputy FOXWELL,
16  who is the only defendant for this claim. None of the other three officers on scene have
17  claims against them. This is not heard on any audio recording.

18        The Equal Protection Clause of the Fourteenth Amendment "is essentially a
19  direction that all persons similarly situated should be treated alike." *Lee v. City of Los*
20  *Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living*
21  *Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)). Accordingly, "the
22  [Equal Protection Clause] prohibits selective enforcement of the law based on
23  considerations such as race." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769,
24  1774, 135 L.Ed.2d 89 (1996); *see Floyd v. City of New York*, 959 F.Supp.2d 540, 667
25  (S.D.N.Y. 2013) ("The Equal Protection Clause's prohibition on selective enforcement
26  means that suspicious blacks and Hispanics may not be treated differently by the police
27  than equally suspicious whites.").

28        To establish an equal protection violation, a "plaintiff[ ] must show that actions of

11

the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiff['s] membership in a protected class." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009); see *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (same). "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022), The defendant must have "acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and emphasis omitted); see, e.g., *Farm Lab. Org. Comm.*, 308 F.3d at 539 ("[E]ven if Trooper Kiefer is correct that the record reveals that he possessed some race-neutral basis for initiating the investigation of the plaintiffs, this fact alone would not entitle him to summary judgment ... as long as the plaintiffs can demonstrate that he was partly motivated by a discriminatory purpose.") (emphasis in original).

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998); *Washington v. Davis*, 426 U.S. 229, 239–40, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Gutierrez v. Municipal Court of the Southeast Judicial District*, 838 F.2d 1031, 1047 (9th Cir.1988) (purposeful discrimination is an essential element of an equal protection claim).

Here, Plaintiff possesses a single after-the-fact statement that he attributes to Deputy FOXWELL. Not only does FOXWELL deny that race played any role in his decision-making process (UMF 26), but there is not one other witness to support what Plaintiff claims to have heard. This is despite the fact that every piece of evidence gathered on scene leading up to this incident involved nothing other than an intention by FOXWELL to deploy his taser because he believed Plaintiff was a threat. There is no information, other than the alleged after-the-fact statement, that Deputy FOXWELL was motivated by Plaintiff's race.

FOXWELL arrived at the location late at night (UMF 4), and heard screaming and yelling coming from the other side of a building. (UMF 5) When he arrived at the source of the yelling, he found Plaintiff screaming and acting irate. (UMF 6-7) He believed the situation was out of control and that the deputies were trying to detain him. (UMF 8) Plaintiff was clenching his fists and screaming, and FOXWELL believed he was getting ready to attack someone. (UMF 9) It was unknown if Plaintiff had any weapons on him. (UMF 10) Deputy FOXWELL ordered Plaintiff to put his hands behind his back, but he did not comply. (UMF 11) Plaintiff stood 6 foot, four inches tall, and weighed around 240 to 250 pounds. (UMF 13) Deputy FOXWELL gave him a second order to put his hands behind his back, and that is when Plaintiff clenched his fists and made an sudden and aggressive movement. (UMF 14) At that point, FOXWELL discharged his taser at Plaintiff. (UMF 15) Absolutely none of this evidence gives any indication that Deputy FOXWELL was acting based upon a discriminatory motive.

Moreover, Plaintiff has produced no evidence in discovery that Deputy FOXWELL had a history of acting with discriminatory intent or had any prior instances of misconduct whatsoever. Plaintiff's single after-the-fact comment is simply not enough.

Accordingly, Plaintiff's second claim for violation of equal protection under the Fourteenth Amendment should be dismissed.

## V. PLAINTIFF'S THIRD CLAIM FOR *MONELL* FAILS BECAUSE THERE IS NO EVIDENCE OF AN UNCONSTITUTIONAL WIDESPREAD CUSTOM AND PRACTICE THAT LED TO A CONSTITUTIONAL RIGHTS VIOLATION

Plaintiff's Third Claim[2] for relief alleges a *Monell* violation due to a purported web of unconstitutional customs and practices by Defendant County. In his Complaint (Dkt. No. 1), Plaintiff alleges that Defendant County's "unconstitutional policies, practices, and customs" include prior knowledge of similar unspecified similar bad acts (¶ 42 a.), refusal to discipline employees for similar bad acts (¶ 42 b.), refusal to investigate other bad acts

---

[2] Mistakenly marked in Plaintiff's complaint as the Fourth claim.

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(¶ 42 c.), retaliation against employees who reported other bad acts (¶ 42 d.), covering up of other bad acts (¶ 42 e.), failure to properly supervise (¶ 42 f.), condoning and participating in false statements and prosecution of groundless criminal charges (¶ 42 g.), condoning and participating in reducing or dismissing criminal charges against individuals in order to release them from civil liability (¶ 42 h.), tacitly condoning and encouraging a conspiracy of silence of bad acts (¶ 42 i.), tacitly condoning and encouraging the use of excessive force (¶ 42 j.), fostering and encouraging an atmosphere of lawlessness, abuse, and misconduct (¶ 42 k.), and the "arrest and unlawful use of force of Mr. Butler [as] part of a practice and pattern of [Defendant County's] unlawful mistreatment and criminalization of African-Americans." (¶ 42 l.) The purported factual basis for these alleged multiple unconstitutional customs and practices are the allegations in this specific incident, in which Plaintiff alleges Defendant Foxwell was dishonest and wrote false statements in his report, and three reports of unrelated incidents dating back to 2015. (See Complaint, ¶¶ 43 - 45 a. – c.) These other three reports have zero connection to the subject incident, and one refers to a report by "KPCC" that African Americans have a disproportionately elevated rate of excessive force against them. None of this has any relation to Deputy FOXWELL or the subject incident, and more pointedly, none of these three items show a widespread pattern and practice of unconstitutional conduct sufficient for *Monell* liability.

It should be noted that Plaintiff's allegations in his complaint are where Plaintiff's supposed evidence ends. His responses to written discovery provide nearly identical allegations with limited evidentiary support, except that he adds the testimony of Sgt. Fries, from the criminal trial, that Defendant COUNTY's policy on use of a taser does not provide a definite cap on how long an individual may be tased (See Plaintiff's response to interrogatories propounded by Defendant COUNTY, set one, attached as Exhibit "F" to Declaration of Adam Miederhoff). Plaintiff fails to provide the specific policy on tasing, which is laid out above. Regardless, even if Plaintiff disagrees with Defendant COUNTY's policy on use of a taser, that does not mean Plaintiff has provided evidence of a *Monell*

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    violation.

2         It is well-established that a public entity may be liable under Section 1983 only if

3    the governmental body itself "subjects" a person to a deprivation of rights or "causes" a

4    person "to be subjected" to such deprivation. See *Monell v. Department of Social Services*

5    *of the City of New York*, 436 U.S. 658, 694 (1978). Under Section 1983, local governments

6    are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479

7    (1986). They are not vicariously liable for their employees' actions. See *Id.*

8         To prove a Section 1983 claim against a county, the plaintiff must show that the

9    violation resulted from the county's official policies or customs. See *Monell*, 436 U.S. at

10   694. Official county policy includes the decisions of a government's lawmakers, the acts

11   of its policymaking officials, and practices so persistent and widespread as to practically

12   have the force of law. See *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). "Liability for

13   improper custom may not be predicated on isolated or sporadic incidents; it must be

14   founded upon practices of sufficient duration, frequency, and consistency that the conduct

15   has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911,

16   918 (9th Cir. 1996); see also *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

17        In order to present a civil rights violation case against a municipal entity, a plaintiff

18   must do more than claim that he was wronged or claim that there was a culture problem

19   among the employees. To justify recovering public funds, he must show that the wrong

20   was driven by the moving force of a municipal policy. "[I]t is not enough for a § 1983

21   plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff

22   must also demonstrate that, through its deliberate conduct, the municipality was the

23   'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal

24   action was taken with the requisite degree of culpability and must demonstrate a direct

25   causal link between the municipal action and the deprivation of federal rights." *Bd. of*

26   *County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388 (1997);

27   *Pitts v. County of Kern*, 17 Cal.4th 340, 348 (1998). Where no policy can be identified, no

28   case can be stated against a municipality on the basis of Section 1983. *Pyne v. Meese*, 172

15

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Cal.App.3d 392, 406-08 (1985).

2         Plaintiff, in this instance, contends that the COUNTY is liable under *Monell* for

3    multiple alleged acts of wrongdoing. The only facts supporting these allegations are the

4    acts of FOXWELL in this specific instance of purported wrongdoing and then reference

5    to three other unrelated items. The first referenced item is from 2017, when "KPCC"

6    reported that data concerning all uses of force revealed that use of forces have been

7    disproportionately directed at African Americans. It is not clear what agency the data

8    applied to, except that Plaintiff noted that the Sheriff's Department had an elevated rate of

9    excessive force. The second item referenced was from 2018, when an unspecified deputy

10   was seen using excessive force on a handcuffed man. The third item was from 2015, when

11   Plaintiff asserts that the Sheriff's Department did not terminate or reprimand a deputy who

12   stole ammunition. None of this is actual evidence, merely Plaintiff's statements in

13   discovery responses. More importantly, none of them have anything to do with the

14   purported constitutional rights violation perpetrate on Plaintiff in this incident, which

15   involved alleged excessive force in the deployment of a taser. There are no associated

16   evidentiary documents for the referenced items. Even so, references to these random and

17   unrelated items is insufficient evidence to show a custom and practice so that is so

18   persistent and widespread as to practically have the force of law.

19        In terms of actual policy, the COUNTY has a policy on use of force and its training,

20   and, specifically, on use of a taser. These policies are referenced in the statement of facts

21   above and will be uncontroverted.

22        Moreover, a pattern of similar incidents is required to prove notice. Plaintiff has the

23   burden of proving that the COUNTY had an official policy, custom or pattern that was the

24   actionable claimed injury.

25            A 'policy' is ' 'a deliberate choice to follow a course of action ... made

26        from among various alternatives by the official or officials responsible

27        for establishing final policy with respect to the subject matter in

28        question.' ' (Citation omitted). *Gibson v. County of Washoe* discussed

                                         16

two types of policies: those that result in the municipality itself violating someone's constitutional rights or instructing its employees to do so, and those that result, through omission, in municipal responsibility 'for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. (*See Gibson,, supra,* 290 F.3d at 1185–86 (citing *City of Canton v. Harris,* 489 U.S. 378, 387–89 (1989)). We have referred to these two types of policies as policies of action and inaction.

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)

A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. *Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir.1992). To establish that there is a policy based on a failure to preserve constitutional rights, however, a plaintiff must show, in addition to a constitutional violation, "that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right[,]" *Id.* at 1474 (quoting *Canton,* 489 U.S. at 389, 109 S.Ct. 1197), and that the policy caused the violation, "in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Gibson,* supra, 290 F.3d at 1194.

These procedural safeguards are put in place to avoid *respondeat superior* liability against a public entity for the alleged shortcomings of its employees. Otherwise, a public entity will always be found to have violated the constitution when an employee makes a mistake. Therefore, Plaintiffs have the burden of proving *deliberate indifference* by the public entity, which requires "actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012).

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Ordinarily a pattern of similar constitutional violations is required to prove deliberate indifference and without such a pattern, it makes it "far less likely that [a plaintiff] can prove [a public entity] was on actual or constructive notice . . . that its policy would lead to constitutional violations." Id. at 1146. This is because "a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

With no pattern shown, and thus no evidence to demonstrate deliberate indifference, Plaintiff's third claim for *Monell* violations must be dismissed.

## VI.   CONCLUSION

Based on the foregoing, Defendants respectfully request summary adjudication of Plaintiff's Second and Third claims, and that those claims be dismissed with prejudice.


DATED: July 9, 2024                     TOM BUNTON
                                        County Counsel


                                        */s/ Adam Miederhoff*
                                        ADAM MIEDERHOFF
                                        Supervising Deputy County Counsel
                                        Attorneys for Defendants,
                                        San Bernardino County and Guyon Foxwell

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants San Bernardino County and Guyon Foxwell certify that the Memorandum of Points and Authorities contains 4,127 words, which complies with the word limit L.R. 11-6.1.


DATED: July 9, 2024                    TOM BUNTON
                                       County Counsel


                                       */s/ Adam Miederhoff*
                                       ADAM MIEDERHOFF
                                       Supervising Deputy County Counsel
                                       Attorneys for Defendants,
                                       San Bernardino County and Guyon Foxwell