UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) Order Re: Defendants' and Plaintiff's Motions for Partial Summary Judgment [DEs 30, 31]

## I. INTRODUCTION

On October 18, 2023, Ricky Butler ("Plaintiff") filed the operative Complaint against the County of San Bernardino (the "County") and Deputy Guyon Foxwell (collectively, "Defendants") asserting claims under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff, who was arrested by County deputies in 2017, alleges that Foxwell's application of a 25-second taser cycle violated his constitutional rights. Plaintiff additionally alleges that the County's taser training and policies are inadequate.

Presently before the Court are Defendants' and Plaintiff's Motions for Partial Summary Judgment. (ECF Nos. 30, 31.) For the following reasons, the Court **GRANTS** Defendants' Motion **in part** and **DENIES** Plaintiff's Motion.

## II. FACTUAL BACKGROUND

The following facts are undisputed[1] unless otherwise noted:

### A. Plaintiff's Arrest

On June 26, 2017, Foxwell encountered Plaintiff, an African-American man, at the scene of a domestic dispute. (McRae Decl., Ex. B at 27:17–28:5, ECF No. 31-3.) Plaintiff was yelling and "seemed very intense and irate." (Miederhoff Decl., Ex. A at 69:17–18, ECF No. 30-2.) Shortly after arriving at the scene, Foxwell unholstered his taser and ordered Plaintiff to put his hands behind his back. (McRae Decl., Ex B at 36:20–23.) Plaintiff refused. (*Id.*)

---

[1] Defendants make numerous objections to evidence Plaintiff submitted in opposition to the County's Motion. (ECF No. 41-1.) To the extent the Court relies upon evidence to which Defendants have objected, the objections are **OVERRULED**. To the extent the Court does not rely upon evidence to which Defendants have objected, the objections are **DENIED** as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

Although the parties agree that Plaintiff was not armed, they dispute what happened next. (*Id.* at 49:20–50:4.) According to Foxwell, Plaintiff leaned forward with clenched fists and started "closing in" on the deputies. (*Id.* at 43:18–19, 45:16–18.) Plaintiff, however, contends that he did not ball his fists or make any threatening movements. (McRae Decl., Ex. A at 51:1–10.)

Foxwell deployed the taser towards Plaintiffs' upper torso. (*Id.* at 57:15–17.) Plaintiff immediately became tense and rigid after the taser prongs struck him. (*Id.* at 59:18–25.) Within a few seconds, two deputies pulled Butler to the ground. (*Id.*) Although the parties dispute whether Plaintiff resisted the deputies' attempts to restrain him, they agree that Plaintiff was subjected to one continuous taser cycle that lasted 25 seconds—the length of time it took the deputies to place Plaintiff in handcuffs. (*Id.* at 71:22–23; Miederhoff Decl., Ex. A at 76:23–77:4.)

Plaintiff contends that after his arrest, which was captured on the deputies' belt recordings, he asked Foxwell why he deployed the taser, to which Foxwell replied, "Because you are big and Black." (McRae Decl., Ex. 11, ECF No. 40-14.) This statement was not captured on a belt recording or overheard by any other witnesses. Foxwell denies making this statement.

**B.    County Taser Use and Training**

A taser is a type of electronic control weapon ("ECW"). (McRae Decl., Ex. F at 12, ECF No. 31-6.) The specific taser Foxwell used has a standard cycle of 5 seconds and automatically shuts off after the standard cycle unless the user keeps the trigger depressed. (*Id.*)

The County training manual instructs officers to use a taser only if a "suspect poses an immediate threat" to officers or the public. (Miederhoff Decl., Ex. D at 687, ECF No. 30-5.) Deputies are further instructed that a taser should not be used "[o]ver a prolonged period of time" and that they should "[m]inimize repeated, continuous or simultaneous exposures." (*Id.* at 687–88.) The training manual does not define "prolonged period of time" or provide explicit instructions regarding the appropriate length of a taser cycle.

The County trained Foxwell to deploy his taser towards a subject's chest and stomach area. (McRae Decl., Ex. B at 58:5–9.) This training is contrary to a 2009 training bulletin published by TASER International, Inc.—the leading manufacturer of ECWs, which recommended aiming the taser "away from the subject's chest." (McRae Decl., Ex. N[2] at 8–9, ECF No. 31-13.)

---

[2] Plaintiff asks the Court to take judicial notice of this document published by the Police Executive Research Forum and U.S. Department of Justice. (ECF No. 31-16.) Defendants do not oppose this Request. Because the document is "not subject to reasonable dispute," the Court **GRANTS** Plaintiff's Request. Fed. R. Evid. 201(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

**C.   Previous Taser Incidents**

In March 2011, the Police Executive Research Forum and U.S. Department of Justice ("DOJ") published a document titled "2011 Electronic Control Weapon Guidelines" (the "Guidelines"). (McRae Decl., Ex. N.) The Guidelines note that "a number of deaths have occurred proximate to the use of ECWs." (*Id.* at 8.) Regarding deaths, the Guidelines state:

> Although causation factors are not clear, the most common factors that appear to be associated with fatal and other serious outcomes include 1) repeated and multiple applications, 2) cycling time that exceeds 15 seconds in duration, whether the time is consecutive or cumulative, and 3) simultaneous applications by more than one ECW. **Officers must be trained to understand that repeated applications and continuous cycling of ECWs may increase the risk of death or serious injury and should be avoided.**

(*Id.* at 13 (emphasis in original).) The Guidelines further suggest, "[p]ersonnel should use an ECW for one standard cycle (five seconds) and then evaluate the situation to determine if subsequent cycles are necessary. Personnel should consider that exposure to the ECW for longer than 15 seconds . . . may increase the risk of death or serious injury." (*Id.* at 20.)

Around 2012, the San Bernardino County Grand Jury formed an ad hoc committee (the "Committee") to investigate the County's taser policy. (McRae Decl., Ex. 15[3] at 69, ECF No. 40-18.) The Committee subsequently published a summary of its findings and recommendations (the "Report"). In the Report, the Committee acknowledged that more than 500 individuals in the United States had died after taser exposure, including three people in the County who died after being exposed to repeated taser cycles. (*Id.* at 81.) The Committee recommended that the County "[f]ormulate training to address the problem of knowing whether the taser is operating properly to avoid continuous, repeated and prolonged use of the taser." (*Id.* at 86.)

**III.   JUDICIAL STANDARD**

Under Federal Rule of Civil Procedure ("Rule") 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

---

[3] Plaintiff asks the Court to take judicial notice of the Report. (ECF No. 40-23.) Defendants make evidentiary objections to the Report, but do not oppose the Request. Because the document is "not subject to reasonable dispute," the Court **GRANTS** the Request. Fed. R. Evid. 201(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a showing "must establish beyond controversy every essential element" of the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)–(b).

On issues where the moving party does not have the burden of proof at trial, the moving party is required to show that no evidence supports the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. To defeat a summary judgment motion, the nonmoving party may not merely rely on his pleadings or on conclusory statements. *Id.* at 324. Nor may the nonmoving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the nonmoving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. When evaluating evidence at the summary judgment stage, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

## IV.   DISCUSSION

Section 1983 makes it unlawful for a defendant acting under color of law to "subject[] . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Although a municipal entity cannot be held vicariously liable for an individual employee's § 1983 violation, a plaintiff may sue the municipality directly to challenge unconstitutional policies. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690–91 (1978).

Plaintiff asserts a § 1983 claim against Foxwell, alleging that he violated Plaintiff's right against excessive force under the Fourth Amendment and his right to equal protection under the Fourteenth Amendment. Plaintiff also asserts a *Monell* claim against the County, alleging that the County maintained inadequate taser training procedures and policies that led to Foxwell's violation of Plaintiff's right against excessive force.

Defendants and Plaintiff each move for partial summary judgment. The Court first addresses Defendants' Motion.

### A.   **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment with respect to Plaintiff's equal protection and *Monell* claims. The Court addresses each claim in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

1. *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment ensures that all individuals are treated equally under a policy or law. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to prevail on an equal protection claim, a plaintiff must prove "that actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009). A plaintiff must support his claim with direct evidence of discrimination. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948–49 (9th Cir. 2003). Mere inferences are insufficient. *Id.*

Plaintiff alleges that he was discriminated against on the basis of his race. This allegation is supported only by Plaintiff's testimony that Foxwell told him he was tased "[b]ecause [he is] big and Black." This statement was not captured on a belt recording or otherwise corroborated. Nevertheless, Plaintiff's testimony is direct evidence of discrimination, and its lack of corroboration "bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (citing *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999)).

Defendants contend that Plaintiff's testimony is insufficient to support his claim in the face of numerous undisputed facts that establish that Foxwell had good reason to use the taser, regardless of Plaintiff's race. This argument evinces a fundamental misunderstanding of Defendants' burden at summary judgment: to show that *no evidence* supports Plaintiff's claim. *Celotex*, 477 U.S. at 325. Rather than meet this burden, Defendants invite the Court to determine Plaintiff's credibility and weigh his testimony against other evidence in the record. This the Court cannot do. Accordingly, the Court **DENIES** the Motion.

2. *Unconstitutional Policy*

A plaintiff may assert a § 1983 claim directly against a municipal entity if the entity's policies violate constitutional rights. *Monell*, 436 U.S. at 690–91. "A policy can be one of action or inaction." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To prevail on a claim based on a policy of inaction, a plaintiff must demonstrate: "(1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." *Long*, 442 F.3d at 1186.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)) (cleaned up). To be liable under this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

demanding standard, a municipality must have been "on actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1186 (2002)). Actual or constructive notice is ordinarily established by showing a previous pattern of similar constitutional violations. *Connick*, 563 U.S. at 62.

Here, Plaintiff alleges a policy of inaction, since the County allegedly failed to: (1) train its officers to avoid shooting tasers into a subject's chest and (2) promulgate a policy limiting the length of taser cycles. Defendants contend that Plaintiff's claim fails because he fails to demonstrate that the County's policies amounted to deliberate indifference. The Court addresses each alleged failure in turn.

Regarding the County's training, the parties do not dispute that the County trained Foxwell to target a subject's chest and stomach area, despite the 2009 training bulletin that recommended aiming ECWs "away from the subject's chest." A jury could reasonably conclude that the County "disregarded a known or obvious consequence of [its] action[s]" by directly contradicting the training bulletin's guidance. *Connick*, 563 U.S. at 61.

The same cannot be said for the County's lack of policy dealing with prolonged or repeated use of tasers. Guidelines from DOJ and recommendations from the grand jury concerning problems of prolonged or repeated tasing were covered by Defendants' instructions that tasers should not be used over a prolonged period of time and repeated tasing should be minimized. Although this policy could have been expressed differently, under the "stringent standard of fault," it cannot be said to demonstrate deliberate indifference. *Id.*

In summary, a genuine dispute of fact exists only regarding whether the County was on notice of the inadequacy of its training. Accordingly, the Court **GRANTS** the Motion to the extent that Plaintiff's *Monell* claim is premised upon the alleged lack of policy limiting the length of taser cycles. To the extent that Plaintiff's *Monell* claim is premised upon inadequate training regarding where officers should aim a taser, the Court **DENIES** the Motion. The Court next addresses Plaintiff's Motion for Summary Judgment.

**B.     Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment with respect to his excessive force claim against Foxwell and his *Monell* claim against the County. Because Plaintiff cannot succeed on his *Monell* claim without establishing a violation of his constitutional rights, the Court first analyzes the excessive force claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

1. *Excessive Force*

The Fourth Amendment limits an officer's use of force to that which is "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether a use of force was reasonable, courts must "consider the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted and the government's interest in the use of force." *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 821 (9th Cir. 2023) (citing *Seidner v. deVries*, 39 F.4th 591, 596 (9th Cir. 2022)). Courts "balance these two factors to determine whether the government's use of force was excessive." *Id.* Excessive force cases are often factually specific, "requir[ing] a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment . . . in excessive force cases should be granted sparingly." *Id.*

Regarding the severity of the intrusion, the Ninth Circuit has observed that tasers in dart mode—like the one Foxwell applied to Plaintiff—cause intense pain throughout the entire body, and therefore "intrude[] upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not." *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010). These weapons "constitute an intermediate, significant level of force." *Id.* at 826. Prolonged exposure to a taser might increase the quantum of force. *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1131 n.4 (9th Cir. 2017).

When evaluating the government's interest in a particular use of force, a court considers "the severity of the crime; whether the suspect posed an immediate threat to the officers' or public's safety; and whether the suspect was resisting arrest or attempting to escape." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018). The "most important" of these factors is "whether the suspect posed an immediate threat" to the safety of those around him. *Bryan*, 630 F.3d at 826 (citing *Smith*, 394 F.3d at 702) (internal quotation marks omitted).

Plaintiff emphasizes that he was unarmed and committing a minor trespassing offense during his encounter with Foxwell. But these facts do not necessarily minimize the government's interests in using force. Although Plaintiff was not armed, he does not present any evidence that Foxwell knew or should have known this information. *Cf. Bryan*, 630 F.3d at 826 ("[A]s Bryan was only dressed in tennis shoes and boxer shorts, it should have been apparent that he was unarmed."). And although trespassing is a minor offense, Plaintiff's trespassing occurred during a heated domestic dispute. An officer might reasonably believe his safety is at risk in such a situation. *See Mattos v. Agarano*, 661 F.3d 433, 450 (9th Cir. 2011) ("We take very seriously the danger that domestic disputes pose to law enforcement officers, and we have no trouble concluding that a reasonable officer arriving at [the scene of a domestic dispute]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-02147-RGK-E | Date | August 23, 2024 |
|---|---|---|---|
| Title | *Ricky Butler v. County of San Bernardino et al.* | | |

reasonably could be concerned about his or her safety."). For these reasons, the undisputed facts do not demonstrate that Foxwell's use of the taser was objectively unreasonable.

Any initial interest the government might have had to subdue Plaintiff, however, was significantly mitigated when two of Foxwell's colleagues pulled Plaintiff to the ground. *See Jones*, 873 F.3d at 1130 (reasoning that although a lone officer's use of a taser "began appropriately enough . . . justification for the use of force waned" when additional officers arrived and began to handcuff the arrestee). Despite the County's diminished interests, however, Defendants insist that Plaintiff's resistance to the arresting officers posed an ongoing threat to public safety. Plaintiff has not refuted Defendants' contentions "beyond controversy." *So. Cal. Gas Co.*, 336 F.3d at 888. Because a triable issue of fact remains as to whether Foxwell's application of the taser was reasonable, the Court **DENIES** the Motion.

    2. *Unconstitutional Policy*

To prevail on his *Monell* claim, Plaintiff must demonstrate "that a county employee violated [his] constitutional rights." *Long*, 442 F.3d at 1186. Therefore, the same triable issue of fact in Plaintiff's excessive force claim precludes summary judgment on his *Monell* claim. Accordingly, the Court **DENIES** the Motion.

**V. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion **in part** and **DENIES** Plaintiff's Motion. The Court **GRANTS** Defendant's Motion to the extent that Plaintiff's *Monell* claim is premised upon the alleged lack of policy limiting the length of taser cycles. To the extent that Plaintiff's *Monell* claim is premised upon inadequate training regarding where to aim a taser, the Court **DENIES** the Motion. The Court additionally **DENIES** the Motions with respect to Plaintiff's equal protection and excessive force claims.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/ak |